# In the United States Court of Federal Claims

No. 23-1238C
(Filed: March 13, 2025)

|  |  |
|---|---|
| **CHRISTOPHER HARKINS, *et al.*,** | ) |
|  | ) |
| *Plaintiffs,* | ) |
|  | ) |
| v. | ) |
|  | ) |
| **UNITED STATES**, | ) |
|  | ) |
| *Defendant.* | ) |
|  | ) |

## REMAND ORDER

On March 11, 2025, the parties filed a joint status report (under seal) in accordance with the Court's February 18, 2025 order (ECF 49). ECF 55. In their joint filing, the parties outlined their respective proposals to effectuate this Court's January 23, 2025 decision (ECF 36) on remand to the United States Coast Guard.[1] At the Court's request, the parties also reached agreement and jointly proposed: (1) a series of notices to current and former Coast Guardsmen who may be entitled to seek corrective action and monetary relief under this Court's decision in *Harkins v. United States*, 174 Fed. Cl. 592 (2025) (ECF 55-1)[2]; and (2) a standard form that current and former Coast Guardsmen may elect to complete if they wish to file an administrative claim for relief (ECF 55-2). The Court appreciates all counsels' professionalism throughout these proceedings and their collaborative engagement in reaching agreement on the most appropriate implementation of this Court's rulings.

For the reasons stated in this Court's January 23, 2025 opinion and order (ECF 36), those explained on the record during the follow-up status conferences conducted on January 30, February 18, and March 13, 2025, and having considered the parties' remand proposals included in their March 11, 2025 joint status report (ECF 55), pursuant to Rule 52.2(a) of the Rules of the United States Court of Federal

---

[1] In proposing remand proceedings, the United States is not conceding liability or damages issues or waiving the government's right to file a notice of appeal from the final judgment entered.

[2] The three proposed notices reflect the current former Coast Guardsmen's status as: (1) voluntarily or involuntarily separated (collectively 274 service members); (2) recipients of an administrative exemption (173 service members); and (3) remaining on active duty (904 service members).

Claims (RCFC) this military pay case is **REMANDED** to the Coast Guard to conduct further proceedings in accordance with the following directives:

(1) Pursuant to RCFC 52.2(b)(1)(A):

    a. Within **thirty days** of receipt of this order, the Coast Guard shall **SEND** (by email and certified mail) the following documents to all 1,352 identified current and former service members:

        i. the appropriate form notice (ECF 55-1);

        ii. an administrative claim form (ECF 55-2)[3]; and

        iii. a copy of this Court's January 23, 2025 decision (ECF 36).

    b. As further defined below, the Coast Guard shall conduct individualized reviews of each administrative claim submitted and promptly notify each current or former service member of the results of that review, including whether they are entitled to a records correction and any consequent administrative and/or monetary relief.[4]

        i. In assessing the administrative claims of <u>involuntarily</u> separated Coast Guardsmen—including plaintiffs Mark A. Byrd, Christopher D. Harkins, Shane R. Nolan, and Matthew W. Powers—the Coast Guard shall:

            1. Confirm an FDA-approved COVID-19 vaccine was readily available to the particular Coast Guardsman at the time they were ordered to be vaccinated.

---

[3] As memorialized in the notices, if interested in filing an administrative claim, current and former Coast Guardsmen are asked to complete and submit the standard form within sixty days. As discussed with counsel, failure to comply with this deadline or otherwise participate in the remand proceedings does not constitute a waiver of a Coast Guardsman's potential claims.

[4] Potential relief includes, but is not limited to, correction of military records, retroactive reinstatement and related benefits based on constructive service, retroactive promotion or promotion consideration, specialty pay, administrative separation boards, reenlistment boards, separation pay, medical treatment (actual or expense reimbursement), and repayment of forfeited reenlistment bonuses. With respect to the correction of military records, the Coast Guard must pay particular attention to removing any unwarranted Coast Guard Form 3307 (CG-3307) (Administrative Remarks) (a/k/a "negative Page 7") and related documentation of a Coast Guardsman's alleged violation of Article 90 (Willfully Disobeying a Superior Commissioned Officer) and Article 92(2) (Failure to Obey other Lawful Order) of the Uniform Code of Military Justice (UCMJ) and other referenced violations of the vaccine mandate.

    a. If not, any contemporaneous adjudication of their religious accommodation request would have been premature and, taking into account the Court's conclusions regarding the application of the Emergency Use Product Act, 10 U.S.C. § 1107a, a denial would be definitionally improper.[5]

    b. If so, the Coast Guard must retroactively reassess the service member's religious accommodation request.[6]

2. To properly assess a religious accommodation request, the Court Guard must examine the following questions:

    a. Did the service member possess a sincerely held religious belief with respect to the COVID-19 vaccine?

    b. Would compliance with the Coast Guard's vaccine mandate have posed a substantial burden on the service member's sincerely held religious belief?

    c. Did the Coast Guard possess a compelling interest in ensuring the health and safety and medical readiness of all service members?

    d. Whether the Coast Guard employed the least restrictive means as applied "to the person" in furthering that compelling governmental interest consistent with the First Amendment to the United States Constitution and the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb-1? In other words, was there any viable alternative to vaccinating the particular Coast Guardsman?

3. If the Coast Guard determines that a religious accommodation request was improperly denied, the service must determine what relief the current or former Coast Guardsman is due in the form of records correction, constructive service, and/or back pay and related benefits.

---

[5] Based upon the record presented, this appears to be the case with regard to plaintiffs Byrd, Harkins, and Nolan.

[6] As documented in the Court's opinion, this appears to be the case with regard to plaintiff Powers.

4. If the Coast Guard determines that a religious accommodation was properly denied, the Coast Guard must nevertheless consider whether the particular Coast Guardsman was improperly denied any pre-separation or separation procedural entitlements and related benefits.

ii. With respect to the administrative claims of <u>voluntarily</u> separated Coast Guardsmen—including plaintiffs Christopher S. Musgrave and Aaron Gutierrez—this Court concluded that they "forfeited their rights to seek legal redress in this Court." *Harkins*, 174 Fed. Cl. at 609. Nevertheless:

1. In order to facilitate their participation in any post-remand class certification or joinder proceedings as well as any appeal to the United States Court of Appeals for the Federal Circuit challenging this Court's waiver ruling, the Coast Guard shall maintain a file of any administrative claims submitted from this putative subclass and include the data in its final report, discussed below.

2. The Coast Guard may—but is not required under this order—review and adjudicate any claims of current or former Coast Guardsman found to have voluntarily separated from active duty rather than face a disciplinary discharge or administrative separation.

iii. With respect to Coast Guardsmen who received an administrative exemption from the COVID-19 vaccine mandate in lieu of a religious accommodation:

1. The Coast Guard must determine whether their separation was voluntary or involuntary. In other words, whether the service member voluntarily separated from active duty rather than face a disciplinary discharge or administrative separation.

2. Depending upon the outcome of that initial determination, the Coast Guard shall follow the above-outlined procedures for involuntary and voluntary separations, respectively, with one caveat. To merit relief, the claimant must demonstrate the claimant must demonstrate that, despite being granted an administrative exemption, they still suffered negative financial consequences as compared to if they had been granted a religious accommodation.

iv. For those Coast Guardsmen who remained on active duty notwithstanding their non-vaccination status, to merit reevaluation of their religious accommodation request, the service member must present a plausible claim that the denial is linked to a diminution or forfeiture of a financial benefit (e.g., promotion non-consideration or non-selection, forfeited educational or advancement opportunity, specialty pay).

    1. If a plausible claim is submitted, the Coast Guard shall follow the procedures outlined above for involuntarily separated service members.

    2. If a plausible claim is not submitted, the Coast Guard shall follow the procedures outlined above for voluntarily separated service members.

(2) Pursuant to RCFC 52.2(b)(1)(B), the Coast Guard shall **COMPLETE** its remand review within **180 days**. This deadline is subject to good faith extension under RCFC 52.2(c)(1).

(3) Pursuant to RCFC 52.2(b)(1)(C), the Clerk of Court is directed to **STAY** all proceedings in this matter during the remand period and until further order of the Court. The Court will retain jurisdiction over this case during the remand period.

(4) Pursuant to RCFC 52.2(b)(1)(D), the defendant shall **FILE** a status report on or before **May 12, 2025**, and **every sixty days** thereafter during the remand period, updating the Court on the status of the remand proceedings.

(5) Pursuant to RCFC 52.2(d), the Coast Guard shall **PREPARE** a final report providing a high-level summary of the ultimate conclusions reached and actions taken during the remand within **thirty days** of the conclusion of the remand proceedings. The final report shall be promptly **FILED** by the U.S. Department of Justice as a notice.

(6) Pursuant to RCFC 52.2(e)(1), the parties shall **FILE** a joint status report within **fourteen days** of the filing of the Coast Guard's final report advising the Court whether further judicial intervention or review is necessary and, if so, proposing a schedule of continued proceedings.

(7) The Clerk of Court shall **SERVE** a copy of this order on the Coast Guard as follows:

Kevin E. Lunday
Acting Commandant
U.S. Coast Guard
Commandant (CG-LCL)
Stop 7213
2703 Martin Luther King Jr. Avenue, SE
Washington, DC 20593-7213

It is so **ORDERED**.

s/ Armando O. Bonilla
Armando O. Bonilla
Judge