**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **CHRISTOPHER HARKINS, et al,**<br><br>***Plaintiffs,***<br>**v.**<br><br>**THE UNITED STATES,**<br><br>***Defendant.*** | **Case No. 1:23-cv-1238**<br><br>**Hon. Armando O. Bonilla** |

**JOINT STATUS REPORT**

Pursuant to the Court's direction at the June 23, 2026 status conference, the Parties submit this Joint Status Report addressing the status of the remand ordered on March 13, 2025, ECF 57 ("Remand Order"), the intervening settlement in *Jackson v. Mullin*, attached hereto as Exhibit [1] ("Jackson Settlement"), and the Coast Guard's implementing guidance, ALCOAST 126/26, attached hereto as Exhibit [2], the potential joinder of 200+ current and former Coast Guard members represented by undersigned counsel ("Putative Plaintiffs"), and the procedures and instructions that should govern remand of Named Plaintiffs and Putative Plaintiffs going forward, and the Court's supervision of the remand process and relief calculations by Defendant. Plaintiffs' position and a proposed order with remand instructions, attached as Exhibit [3], follow.

**DEFENDANT'S POSITION:**

1. **STATUS REPORT OR REMAND PROCEEDINGS**

As directed during the June 23, 2026, status conference, the parties exchanged information to create a spreadsheet listing Military Backpay PLLC's[1] 222 clients and the

[1] The United States refers to plaintiffs' counsel's law firm in this status report as Military Backpay PLLC. We do so to distinguish between issues related to the law firm's other clients, who have not been joined in this action, and the plaintiffs in this action.

status of those individuals' remand claims and Board for Correction of Military Records (BCMR) actions, if any. The following describes the status of the remand process including how many of Military Backpay PLLC's clients submitted claims in the remand process and the separate process of submitting applications to the BCMR.

In response to the notifications ordered by this Court (ECF 36), the Coast Guard received forty-five claims on the court approved form. Of those claims, sixteen were submitted by Military Backpay PLLC's clients. As specified below, of the forty-five remand claims, seventeen have been awarded relief at the BCMR or have an application pending decision, including five claims from Military Backpay PLLC's clients. Of the twenty-eight remaining claims submitted in the remand, eighteen did not object to their discharge and ten did object to their discharge. Of those twenty-eight claims, eleven claims were submitted by Military Backpay PLLC's clients, seven did not object to their discharge and four did object to their discharge. The Coast Guard anticipates adjudicating the remaining twenty-eight claims by the September 9, 2026, deadline.

Of the forty-five remand claims, fourteen claims, including five from Military Backpay PLLC's clients, were part of the first group application submitted to the BCMR. As previously reported, on February 12, 2026, the Coast Guard Board of Corrections for Military Records rendered its Final Decision on the group application. On February 27, 2026, plaintiffs' counsel provided the Coast Guard with a list of their clients. The members covered by the group application included plaintiffs Shane Nolan and Mark Byrd as well as 24 other members who are clients of Military Backpay PLLC, including the five who submitted claims in the remand. The Coast Guard has been gathering documentation of civilian earnings during the period of constructive service from the members and Veteran Affairs documentation to determine the amount of backpay that

may be owed to each member. Coordination with the VA is necessary to avoid creating a debt owed by the members. Once the amount of backpay has been calculated, that calculation is shared with the members. During the Department of Homeland Security funding lapse, which ended April 20, 2026, no funds were available to make payments and certain Coast Guard civilian personnel who have important roles in the processing of these payments were furloughed. The Coast Guard is now funded through the end of the fiscal year, and funding issues will not be a further impediment to completing the remand proceedings by September 9, 2026. The Coast Guard has paid one member and is processing additional payments as documentation is received.

The Coast Guard has submitted a second group application for ten additional members who were separated from the Coast Guard based on their COVID-19 vaccination status and have returned to active duty. One of those members submitted a claim in the remand process, but that member is not a client of plaintiffs' counsel. Four of the ten are clients of Military Backpay PLLC, but none of the four submitted a claim in the remand process. Defendant anticipates that the BCMR will provide relief to these ten members consistent with that provided to the first group.

Two members who submitted claims in the remand process returned to service as reservists rather than to active duty and individual applications to the BCMR are being processed to determine what relief is appropriate for their situation. Neither member is a client of Military Backpay PLLC and both submitted claims in the remand.

There are an additional twenty-one members who submitted individual applications to the BCMR, including five from Military Backpay PLLC clients. One of the five was granted relief as part of the group application and also submitted a claim in the remand. None of the other four clients submitted a claim in the remand process.

**2. DEFENDANT'S RESPONSES TO PLAINTIFFS' LEGAL ISSUES**

The United States understands plaintiffs to be presenting, in their position statement, new legal issues upon which they seek rulings from the Court. The United States contends that to the extent plaintiffs are seeking additional relief in this matter, the appropriate method to present these arguments is through motions practice. However, for the Court's convenience, the United States includes a brief response to these new legal issues, while reserving our rights to present a full exposition on these issues in response to any motions that may be filed by plaintiffs or in any briefing ordered by the Court.

As the United States understands plaintiffs' contention, they seek rulings from the Court that: (1) the Government has conceded via a settlement agreement executed in another case a legal issue that will directly impact this matter, and allegedly lead to a guarantee of relief according to plaintiffs; and (2) that the Court issue a new remand order instituting additional and different procedures to address both the claims of current plaintiffs and other clients of Military Backpay PLLC.

Regarding the request for a new remand order, plaintiffs contend that the process established through the Court's remand order (ECF 57) has not met with plaintiffs' expectations and that more formal procedures under Rule 52.2 are necessary. Plaintiffs contend that the Court should enter a new remand order "modeled on the order entered in the companion Bassen matter." As the process instituted in the *Bassen* litigation, Case No. 23-211 (Fed. Cl.), was the result of motions practice concerning joinder of additional plaintiffs, the United States respectfully submits that motions practice will likely be necessary in this matter too if new remand procedures are to be ordered. Moreover, plaintiffs appear to agree that motions practice on these issues is required, as they state

that "they anticipate presenting by separate motion" their "proposed order governing the remand and relief process."

To the extent plaintiffs' counsel intends to seek to modify or replace the Court's remand order in this case, and potentially also seek to join additional plaintiffs in this action, the more appropriate method of doing so would be through motions practice. Requiring motions practice on these issues would not prejudice the current plaintiffs as the remand processing currently underway is scheduled to be completed by September 9, 2026. Moreover, many of the claimants in that process are not clients of Military Backpay PLLC, and any change to the current remand procedures may impact those claimants. The United States contends that the current remand process should be completed at a minimum to address those claimants. In addition, the Coast Guard is managing the remand and the process of reinstating members and providing relief through the BCMR as directed by the President and the Secretary of Homeland Security. A significant number of claimants are receiving relief through that process.

Regarding the new legal issues, plaintiffs contend that (a) the government has admitted that the mandate was unlawful in a settlement in another case and that admission will dictate defenses available in this litigation, (b) it is inappropriate for the Government, presumably through the Coast Guard Pay & Personnel Center (PPC) to provide monetary relief directly to service members whose records have been corrected instead of routing payment through counsel, and (c) that reinstatement cannot be held to be a precondition to receiving relief under Executive Order 14184.

Plaintiffs seek rulings from the Court on each of these issues, but such claims should be asserted through motions practice. The United States does not concede any of these points but again reserves its rights to provide a full exposition on these issues in

response to any motions that may be filed by plaintiffs or in any briefing ordered by the Court. Moreover, plaintiffs' counsel has presented a similar argument regarding reinstatement as a precondition in merits briefing in the *Bassen* litigation, which supports the United States contention that these issues should be addressed through motions practice, if not reserved for any merits briefing that may occur in this case.

Finally, the Court also requested to know dates counsel are available to discuss this status report. Defendant is generally available beginning July 29, 2026, through August 7, 2026. Prior to that date, undersigned counsel has pre-planned vacation the week of July 20-24, 2026, and filing deadlines and oral argument in advance of that date.

**PLAINTIFFS' POSITION**

Fourteen months after this Court remanded these claims to the Coast Guard, not a single Plaintiff has received an individualized decision, a records-correction estimate, a pay computation, or a dollar of relief. The Coast Guard has never established the informal claim-and-review mechanism the Court envisioned, and its Group Board for Correction of Military Records (BCMR) process—now more than a year old—has produced no individualized findings and no relief estimate for any of the 56 members it covers. In the interim, the Government has, in the Jackson Settlement and in ALCOAST 126/26, admitted that the very mandate at issue here "was unlawful as implemented" and that affected members were "unjustly discharged." The premise of this Court's remand—the requirement for individualized re-adjudication of religious accommodation requests—has thus been overtaken by the Government's own concessions, leaving only the computation of relief to be done.

As explained herein and at the June 23, 2026 hearing, Plaintiffs respectfully request that the Court order Defendant to conduct a transparent, court-supervised

remand process. Plaintiffs urge the Court to issue an order pursuant to Rule 52.2 of the Rules of the United States Court of Federal Claims (RCFC) with fixed timelines, written proposed relief and payment figures that counsel can review and contest before implementation, formal recognition of Plaintiffs opted-in clients, and the Court as the referee for disputes—covering both the reinstated members and the far larger group of non-reinstated clients. Plaintiffs have attached hereto as Exhibit [3] a Proposed Order with remand instructions that would govern the requested formal remand process. The Government prefers to complete the existing administrative remand for the group-BCMR members, to pay through the Coast Guard Pay & Personnel Center (PPC) on a "calculate-and-concur" basis, and to address the remaining members case by case, without any global mechanism. Because the informal process the Court contemplated has not materialized, Plaintiffs respectfully ask the Court to adopt the procedures and remand instructions in the attached Proposed Order.

## I. FACTUAL BACKGROUND

### A. The Litigation and the Court's Merits Ruling.

Plaintiffs are current and former Coast Guard members who submitted religious accommodation requests (RARs) to the COVID-19 vaccination mandate and were denied and separated or otherwise adversely affected. The named Plaintiffs' RARs and appeals were denied in 2022, each received a negative administrative remarks entry, and each was separated between July and December 2022. Congress directed rescission of the mandate in the Fiscal Year 2023 National Defense Authorization Act, and the Coast Guard rescinded it on January 11, 2023.

On January 23, 2025, the Court issued an order, ECF 36 ("MJAR Order") partially granting Plaintiffs' MJAR, ECF 26. The Court held that the Coast Guard improperly

conflated emergency-use vaccines with FDA-approved vaccines in violation 10 U.S.C. § 1107a, and that the Coast Guard's rote denial of religious accommodation requests violated the Religious Freedom Restoration Act. *See Harkins v. United States*, 174 Fed. Cl. 592 (2025). Four days later, the President issued Executive Order 14184, "Reinstating Service Members Discharged Under the Military's COVID-19 Vaccination Mandate" (Jan. 27, 2025) ("Reinstatement EO"), directing the Services to offer reinstatement, revert members to former rank, and provide full back pay and benefits. The Court denied the Government's motion to stay pending implementation of the Order. ECF 42.

**B. The Court-Ordered Remand and the Failed Informal Process.**

On March 13, 2025, the Court issued its Remand Order, ECF 57, under RCFC 52.2, directing the Coast Guard to send notices and claim forms to all identified current and former members, to conduct individualized reviews (including reassessment of the RARs of Byrd, Harkins, Nolan, and Powers), to complete the remand within 180 days, and to file periodic status reports; the Court stayed proceedings and retained jurisdiction. The Court understood the remand to allow any non-named member who filed an informal claim in response to the notice to have that claim considered informally, with dissatisfied claimants free to return to this Court by joinder or agreement. ECF 101, June 23, 2026 Hearing Tr. at 11 & 14-18.

That informal process never materialized for the Plaintiffs represented by counsel. Since the March 2025 remand, Plaintiffs' counsel repeatedly asked how to submit informal claims for the members who responded to the notice and what would be done for "the other plaintiffs" beyond the group-BCMR members, and received no workable mechanism in response. See Exh. [4], June 25, 2026 Saran-Judge Email ("RE: CGBCMR Group Petition Results") & Attachments. As counsel candidly advised the Court on June

23, 2026, proceeding "informally is not working so well for us." ECF 101, June 23, 2026 Hearing Tr. at 15. The Court itself observed that the remand had "been going on for some 14 months" and expressed that it was "a bit disappointed" that the process—"one of the Coast Guard's own making"—had run more than a year. ECF 101 at 4, 20.

### C. The Group BCMR: No Individualized Determinations and No Relief.

The Coast Guard submitted a 59-member group application to the BCMR, and on February 12, 2026 the Board granted relief to 56 members, directing retroactive reinstatement to the separation date, removal of the COVID-related discharge, constructive-service credit, back pay, and restoration of rank and seniority. See Exh. [5], Feb. 12, 2026 Coast Guard Group BCMR Decision. Approximately 24 of those members are Plaintiffs represented by counsel, in addition to named Plaintiffs Nolan and Byrd. Yet more than a year into that process, no Plaintiff has received an individualized finding of any kind that would indicate the exact relief granted, no relief calculation or estimate, and—despite months of requests—none of the decisional documents to which the members are entitled. The advisory opinion, when finally produced, simply consisted of a cover letter with the roster of group applicants attached. As counsel put it to the Court, Plaintiffs have "nothing to agree with, to argue with, to dispute." ECF 101, June 23, 2026 Hearing Tr. at 12.

The named Plaintiffs illustrate the vacuum. Nearly a year ago the Coast Guard represented that Powers and Harkins would receive relief, and later that Nolan and Byrd were included in the Group BCMR. As of late June 2026, however, Harkins (submitted to PPC on March 30) and Powers (submitted April 30) have received no document explaining what relief they are to receive or why; Powers has no explanation for why his

constructive service is cut off at his civilian rehire date (in 2023) rather than his ETS (May 2026) creating an unresolved separation-pay question under 10 USC §1174; and Byrd (submitted April 17) and Nolan (submitted April 30) await simple record fixes before imminent retirement. See Exh. [4], June 25, 2026 Saran-Judge Email & Attachments. The controlling point is not merely the absence of payment, but the absence of any decisional document or even records correction that Plaintiffs' counsel, this Court, or ANYONE can evaluate or challenge.

### D. The Jackson Settlement and ALCOAST 126/26.

On April 15, 2026, the parties in *Jackson v. Mullin*, No. 4:22-cv-00825-P (N.D. Tex.)—a class action complaint filed by Coast Guard members challenging the same mandate's RFRA implementation—filed a stipulation of dismissal with prejudice attaching a settlement effective April 10, 2026 (i.e., the Jackson Settlement).[2] On May 11, 2026, the Coast Guard issued ALCOAST 126/26, which recites that the mandate "was unlawful as implemented, unfair, overbroad, and an unnecessary burden" and that members "were unjustly discharged." As of July 2, 2026, however, the Section 8 memorandum had not issued, as Coast Guard Counsel Brian Judge acknowledged in his response to Saran's June 25, 2026 email.

[2] See Exh. [1], Jackson Settlement. The settlement requires the Coast Guard to remove COVID-related records for members who sought a religious exemption (Section 1); to issue an ALCOAST declaring the mandate "unlawful as implemented and an unfair, overbroad, and completely unnecessary burden on service members" (Section 2); to secure a Department of Homeland Security memorandum directing the Coast Guard BCMR to "exercise broad discretion in providing appropriate corrections to the records of service members and former service members who suffered harms" (Section 8); and it expressly provides that "all Covered Service Members are intended third-party beneficiaries" with the right to enforce its terms (Section 10).

### E. The Curry Advisory Opinion.

The Coast Guard's own adjudications confirm that the voluntary/involuntary line has collapsed. In CG BCMR Docket No. 2025-178, the applicant voluntarily separated in August 2022 in connection with the mandate; the PPC and Coast Guard counsel both recommended, and the Board was asked to grant, reinstatement, back pay, constructive service, and a change of discharge "from voluntary to involuntary." See Exh. [6], Advisory Opinion No. 2025-178 (Curry AO), at 3. That is precisely the relief the Government contends voluntarily separated members forfeited, now being afforded administratively and viewed as legally correct.

## II. NEWLY EMERGENT LEGAL ISSUES

Two developments since the remand—the Jackson settlement and the Government's administrative admissions—materially change the posture of this case, and a third—the Government's stated view that it may pay Plaintiffs' represented clients directly—threatens counsel's ability to represent them. Plaintiffs identify these issues to frame the relief they seek; they do not, in this status report, undertake to prove each point as they would on a dispositive motion.

### A. The Government's Admissions That the Mandate Was Unlawful Are Binding Against It.

Defendant has repeatedly and consistently admitted that mandate was unlawful as implemented—in President Trump's Reinstatement EO, the Jackson Settlement, and ALCOAST 126/26, as well as several DoW guidance documents and directive.[3] Those

[3] *See* EO 14184, "Reinstating Service Members Discharged Under Military's COVID-19 Vaccination Mandate" 90 FR 8,761 (Jan. 27, 2025), § 1; *see also* SecDef Guidelines OUSW P&R, "Updated Guidance... for Service Members Involuntarily Separated for Refusal to Comply with Coronavirus Disease 2019 Vaccination Requirements" (Apr. 1, 2025);

admissions repeat and go well beyond this Court's own January 23, 2025 ruling on Plaintiffs' MJAR and remove any genuine dispute over liability. It remains unclear how DHS believes it sits separate from the President and Secretarial findings over this Mandate, or its own stipulated admissions.

### B. Plaintiffs Are Intended Third-Party Beneficiaries of the Jackson Settlement.

More importantly, Section 10 of the Jackson settlement satisfies that standard on its face: it "expressly agree[s] that all Covered Service Members are intended third-party beneficiaries" with "the right to enforce the terms of the Agreement." Exh. [2], Jackson Settlement, ¶10. "Covered Service Members" are defined as those who previously submitted a religious accommodation request ("RAR")—a class that squarely describes each of the Harkins Named Plaintiffs, and vast majority of the 200+ current and former Coast Guard members represented by under-signed counsel who wish to join this proceeding. Because the Government "specifically identified" that class as intended beneficiaries, Plaintiffs are direct, not incidental, beneficiaries. Section 10 is exactly such an authorization, and the settlement imposes independent, negotiated obligations rather than merely reciting a statute.

As intended beneficiaries, Plaintiffs may demand the Section 1 records corrections and the Section 2 non-discrimination protections now, and may insist on the Government's performance of the still-unissued Section 8 memorandum—the term that would carry the "broad discretion" records-correction directive directly into this remand.

---

"Supplemental Guidance to... Boards of Correction of Military / Naval Records Considering... Service Members Adversely Impacted by Coronavirus Disease 2019 Vaccination Requirements" (May 7, 2025); "Supplemental Guidance to... Boards of Correction of Military / Naval Records Considering... Service Members Adversely Impacted by Coronavirus Disease 2019 Vaccination Requirements" (Dec. 10, 2025).

Plaintiffs ask that the Court direct the Government to state whether it considers the Coast Guard bound by the settlement as to Plaintiffs' clients and to complete the Section 8 memorandum.

### C. Direct Payment of Represented Members Would Violate Rule 4.2 and Impair Plaintiffs' Representation.

Since February 2026, Plaintiffs' counsel has repeatedly asked the Government to recognize the members as represented parties and to route all inquiries and relief through counsel. The Government has nonetheless signaled that PPC may calculate and pay members directly, prompting counsel's question whether "our folks just get what they get" while "you guys . . . can just pay them directly without us and we just watch." Exh. [4], June 25, 2026 Saran-Phillips Email, at 2. Such a unilateral payment by PPC cannot, as a matter of law, settle, moot, waive or extinguish Plaintiffs' claims; only the Department of Justice may compromise or settle a claim in litigation, 28 U.S.C. §§ 516, 519. In any case, a claim is satisfied only upon the claimant's affirmative acceptance, not a unilateral deposit. 10 U.S.C. § 1552(c)(3). Nevertheless, Plaintiffs respectfully request that the Court adopt procedures (as set forth in the Proposed Order) to prevent future unilateral contacts and payments by PPC (or other unauthorized agencies or officials that purport to pay and settle claims that are the subject of this litigation), consistent with this Court's case-management and remand-supervision authority.

### D. The Informal Process Has Failed, and a Formal RCFC 52.2 Process Is Now Required.

The Government's across-the-board admission that the mandate was unlawful removes any remaining justification for the individualized re-adjudication of religious accommodation requests contemplated by the remand order. If the mandate was "unlawful as implemented" for all members, then there is no open, member-by-member

liability question to decide, and the remand should move directly to the computation of relief. That is Plaintiffs' central procedural point: no individualized "merits" determination remains, so the remaining task is documenting and calculating what each member is owed.

The Court should give no weight to the Government's recurring invocation of the need for "individualized determinations" as the reason for delay. The Coast Guard has not made any such determinations in the five years since the mandate issued—not on the religious accommodation requests, which this Court found were denied through a uniform, sham process; not for the named Plaintiffs; and not for the members covered by its own Group BCMR application. Having failed to make individualized determinations in every setting requiring them, the Government cannot invoke the burden of making them as a defense to providing relief.

Because the informal process the Court envisioned has not been implemented and no decisional documents or payments have issued nearly a year after relief was promised, a formal RCFC 52.2 order—modeled on the order entered in the companion Bassen matter—is the sensible path. This Court has already exercised its authority to prescribe detailed remand instructions once in this case; it should do so again with tighter procedures that require decisional documents, relief computations, and a defined opportunity to object.

**E. Reinstatement Is Not a Precondition to Relief.**

The Coast Guard's actions and guidance—in particular ALCOAST 126/26, which addresses relief principally in terms of reinstatement under the Executive Order—risk treating a return to service as a practical precondition to relief, paralleling the position litigated by the plaintiffs in Bassen. This Court has already rejected that premise. At the

June 23, 2026 conference, the Court confirmed that its decision "goes further than" the Executive Order and that there is no requirement in its ruling "that they do reinstate." ECF 101, June 23, 2026 Hearing Tr. at 17-18. The Curry AO confirms the point in practice: the Coast Guard is already affording a voluntarily separated member full reinstatement, back pay, and constructive service. See Exh. [6], Curry AO, at 3.

Because relief does not depend on reinstatement, the Court should adopt Plaintiffs' proposed order and channel the remaining work into a formal Rule 52.2 process that reaches all Plaintiffs, including those who do not seek to return to service. Notwithstanding this, as the emails show, Coast Guard counsel now assert that anyone who "voluntarily" discharged or has claims outside of Reinstatement must go on their own to the CG Board. We are also, of course, past the 3-year statute of limitations for a direct Board petition under 10 USC §1552; having filed in this Court first, however, these plaintiffs ask the Court simply to sanction what they already have an entitlement to under case law and the *Jackson* settlement: a Board remand for specific, individual relief in groups of 35-40 each month on a reasonable deadline within the rules under 52.2.

### F. The Court Should Adopt a Court-Supervised Tracking Mechanism.

At the June 23 conference, the Court identified two ways to track the client population: a chart provided to Government counsel to "track those folks down," or, "along the lines of an FLSA collective action," a chart "file[d] . . . under seal with the Court so that the Court can keep track of what's happening in response to the court-directed notice." ECF 101, June 23, 2026 Hearing Tr. at 16. Plaintiffs respectfully urge the second option. A sealed, court-filed chart gives the Court direct visibility, creates a neutral record of who submitted what and when, dovetails with the deadline structure of a Rule 52.2

order, and addresses the statute-of-limitations exposure the Court flagged by fixing each member's status on the docket. The alternative—leaving tracking to the Government—perpetuates the very lack of visibility that has defined the remand to date.

## III. PROPOSED ORDER AND REMAND INSTRUCTIONS

Plaintiffs attach as Exhibit 3 a proposed order governing the remand and relief process, which they anticipate presenting by separate motion to enforce the remand order and for a protective order. In substance, the proposed order would: clarify that the RCFC 52.2 stay governs the timing of merits litigation but does not authorize the Government or its agents to settle, waive, or unilaterally resolve any Plaintiff's claim; provide that the Government and its agents—including the Coast Guard, the BCMR, PPC, (and DFAS perhaps)—shall not communicate directly with any represented Plaintiff about the subject of this litigation, with counsel as the single point of contact; establish a batched submission schedule for Plaintiffs' opted-in clients and a sealed tracking chart filed with the Court; require the Coast Guard and PPC to produce, before any payment, a written records-correction estimate and a pay-computation analog that counsel can review; and establish a two-window objection-and-review procedure under which Plaintiffs may object first to the proposed record correction and then to the financial calculation, with the Court resolving disputes.

Each of these directions is well within the Court's remand and supervisory authority under 28 U.S.C. § 1491(a)(2). The Proposed Order and the remand instructions therein are consistent with recent decisions by this Court. Recent decisions confirm the Court's power to issue exactly such directions before final judgment and to direct payments if necessary. In *Driscoll v. United States*, the Court entered a pre-judgment remand directing DFAS to calculate the back pay owed for a specified period while staying

actual payment until entry of final judgment, requiring status reports, and retaining jurisdiction. *Driscoll v. United States*, No. 19-1640, 2022 WL 3330432 (Fed. Cl. Aug. 11, 2022). In *Attia v. United States*, the Court remanded directly to DFAS with instructions to calculate a federal tax gross-up before entering a money judgment, grounding that authority in its existing Tucker Act jurisdiction and 10 U.S.C. § 1552(c)(1). *Attia v. United States*, 176 Fed.Cl. 36. That authority follows from the Court's retention of jurisdiction throughout the remand period, as this Court recognized in *Wolfing v. United States*, 163 Fed.Cl. 135. And remand to reconsider an agency position is appropriate absent frivolousness or bad faith. *SKF USA Inc. v. U.S.*, 254 F.3d 1022. It is particularly necessary here where the government previously led the Court to believe that "[i]n implementing this decision, the Coast Guard is also working with counsel for plaintiff to determine whether other issues exist regarding the relief provided with the intention of attempting to resolve these other issues *without the need to further judicial intervention*[,]" in its March 9, 2026 Status Report (ECF 94, pp. 1-2); but now – months later after ignoring repeated entreaties *now* takes the position that if the plaintiffs want relief that there needs to be "motions practice" over those issues.

The procedures Plaintiffs propose fit squarely within this framework: they channel the Coast Guard's and PPC's computation and payment of relief through the Court's continuing supervision; they do not ask the Court to compel any particular monetary result or to enter standalone injunctive relief. Plaintiffs have included Exh. [7], the updated list of all plaintiffs with cognizable claims who seek relief through this action and associated information about their claim status.

For these reasons, Plaintiffs respectfully request that the Court adopt the attached proposed order and set a follow-up conference or briefing schedule as it deems

appropriate. In keeping with the Court's direction at the status conference,[4] plaintiffs' counsel are available at the Court's earliest convenience.

Dated: July 7, 2026

*/s/ Dale Saran*
Dale Saran, Esq.
19744 W. 116th Terr.
Olathe, KS 66061
Tel. (401) 321-0289
dale.saran@militarybackpay.com

*/s/ Barry Steinberg*
Barry Steinberg, Esq.
Kutak Rock LLP
1133 Connecticut Ave., NW, Suite 1200
Washington, DC 20036
Tel. (202) 828-2400
barry.steinberg@kutakrock.com

*/s/ Brandon Johnson*
Brandon Johnson, Esq.
8380 Bay Pines Blvd.
St. Petersburg, FL 33709
Tel. (727) 709-7668
brandon.johnson@militarybackpay.com

*/s/ J. Andrew Meyer*
J. Andrew Meyer, Esq.
8380 Bay Pines Blvd.
St. Petersburg, FL 33709
Tel. (727) 709-7668
a.meyer@militarybackpay.com

*Attorneys for Plaintiffs*

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

WILLIAM J. GRIMALDI
Assistant Director

/s/Vincent D. Phillips, Jr.
VINCENT D. PHILLIPS, JR.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
P.O. Box 480
Ben Franklin Station
U.S. Department of Justice
Washington, DC 20005
Telephone: (202) 305-4591
Email: Vincent.Phillips2@usdoj.gov

Attorneys for Defendant

Dated: July 7, 2026

[4] "I will convene a status conference after reviewing that status report in early July -- I guess it would be mid-July, and we can walk through the chart, or whatever document you can append to the status report ." June 23, 2026 hearing tr. p. 19.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.

*/s/ Dale Saran*
Dale Saran